**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BROTHERS OF THE WHEEL
M.C. EXECUTIVE COUNCIL, INC.,

                Plaintiff,

v.                                 CIVIL ACTION NO.  2:11-cv-00104

GERALD R. MOLLOHAN, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are several motions, namely: (1) Defendant Gerald R. Mollohan's

motions to dismiss the complaint [Dockets 5, 13, 20, 26]; (2) Plaintiff Brothers of the Wheel M.C.

Executive Council, Inc.'s motion for default judgment [Docket 14] and Defendant's motion to deny

the motion for default judgment [Docket 15]; and (3) Plaintiff's motion for summary judgment

[Docket 17].  On April 7, 2011, this action was referred to the Honorable Mary E. Stanley, United

States Magistrate Judge, for submission to this Court of proposed findings of fact and

recommendation for disposition ("PF&R"), pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket 8.)

Magistrate Judge Stanley has submitted her PF&R and recommended that the Court grant the

motions to dismiss as to Counts III through VI of the complaint and grant Plaintiff's motion for

summary judgment on the remaining counts, Counts I and II.  (Docket 56 at 16-50.)  Magistrate

Judge Stanley also recommended that the Court deny Plaintiff's motion for default judgment, grant

Defendant's motion to deny the motion for default judgment, and deny as moot Defendant's motion

for court injunction.[1]  (*Id.* at 33-35, 57.)  On January 6, 2012, following a court-approved extension of time, Defendant filed timely objections to the PF&R. (Docket 54.) Plaintiff responded on January 16, 2012.  (Docket 55.)  For the reasons that follow, the PF&R is **ADOPTED** except as to the recommended finding on treble damages.

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Brothers of the Wheel M.C. Executive Council, Inc. ("Plaintiff" or "BOTW") filed the complaint in this action on February 15, 2011, alleging that Defendant Gerald R. Mollohan ("Defendant" or "Defendant Mollohan"), a former member of Plaintiff's organization, violated federal and state trademark laws by developing and using in commerce a mark that is confusingly similar to the collective membership mark Plaintiff uses to identify its motorcycle club.  (Docket 1 at 1-3.)  Plaintiff also claims that Defendant Mollohan is diluting its allegedly famous  mark and engaging in "cyber-piracy."  (*Id.* at 1.)  The complaint seeks to enjoin Defendant from using the allegedly infringing mark, as well as compensatory and statutory damages.  (*Id.* at 12-15.)  Also named as defendants alongside Defendant Mollohan are fifty John Doe defendants, which Plaintiff states are "persons to whom Gerald Mollohan sold to or allowed to use the trademark protected items belonging to Brothers of the Wheel."  (*Id.* at 6.)

On March 4, 2011, Defendant Mollohan filed his first motion to dismiss, in which he argues: (1) that there is no evidence of actual confusion by the public between his mark and Plaintiff's mark; and (2) that while "[i]t may be true that there are some similarities in the two marks," likelihood of confusion does not exist. (Docket 5 at 2-4.)  On April 21, 2011, Magistrate Judge Stanley held a status conference and ordered Defendant to file an answer to the complaint by May 6, 2011. (Docket

---

[1]  The motion for court injunction, Docket 24, seeks an order prohibiting any contact by physical or

2

11.)  Instead, Defendant Mollohan filed a second motion to dismiss on May 5, 2011, which is nearly identical to his first motion.  (Docket 13.)  On June 2, 2011, Plaintiff filed a motion for default judgment, Docket 14, which Defendant Mollohan opposed via the "motion to deny plaintiff's motion for default judgment" that he filed on June 17, 2011, Docket 15.  On July 19, 2011, Plaintiff filed its motion for summary judgment and permanent injunction. (Docket 17.).  Magistrate Judge Stanley ordered Defendant Mollohan to respond to the motion by August 5, 2011.  (Docket 18.)  Defendant filed his response on August 5, 2011, Docket 19, and Plaintiff replied on August 10, 2011, Docket 21.  Defendant Mollohan filed a sur-reply of sorts on August 18, 2011, which he titled "Defendant's Response to Plaintiff's Motion of August 3, 2011 [sic] Regarding Magistrate Stanley's 'Order.'" (Docket 23.)  Defendant Mollohan also filed a third motion to dismiss on August 5, 2011, Docket 20, and a fourth motion to dismiss on September 20, 2011, Docket 26. These two motions to dismiss are also largely identical in argument to one another.  On September 6, 2011, the defendant filed a "Motion for Court Injunction(s)," wherein he alleges harassment on the part of Plaintiff and its members and requests that BOTW and its officers and members be forbidden from communicating with the defendants and from coming within one hundred yards of the defendants.  (Docket 24.)  On September 28, 2011, in the face of duplicative and counterproductive filings from both Plaintiff and Defendant Mollohan, Magistrate Judge Stanley stayed discovery and halted the filing of any additional motions until further notice.  (Docket 29.)  With the exception of objections to the PF&R and Plaintiff's response thereto, this order remains in effect, and the Court therefore presently considers only Magistrate Judge Stanley's PF&R, Defendant Mollohan's objections to the PF&R,

---

electronic means between any member of Plaintiff organization and any defendant, *see infra*.

and Plaintiff's response to Defendant's objections (as well as those filings that precede the stay order).

The PF&R recites facts from the complaint and the various filings by the parties.  The relevant facts relied upon by Magistrate Judge Stanley are largely, if not wholly, unchallenged by either party in the objections and response.  Furthermore, Defendant Mollohan was given several opportunities to challenge any facts presented by Plaintiff *with evidentiary support*, such as by affidavit, but he failed to do so.[2]  In contrast, Plaintiff submitted two affidavits: one from its national vice president that, *inter alia*, verifies the complaint,[3] and one from an individual claiming actual

---

[2] Magistrate Judge Stanley specifically advised Defendant Mollohan of the following:

> Defendant Mollohan is advised that factual statements in affidavit [sic] submitted by the plaintiff will be accepted as true unless defendant Mollohan sets forth facts in his response indicating the existence of a genuine or actual dispute of material fact for trial.  In the response, defendant Mollohan must set out either in his own affidavit or sworn statement, or the affidavits or sworn statements of other witnesses, specific facts that show that the plaintiff and defendant Mollohan actually disagree about one or more important facts present in this case.  In the affidavits and exhibits, defendant Mollohan should address, as clearly as possible, the issues and facts stated in the Complaint and in the affidavits or other evidence submitted by the plaintiff.

> Defendant Mollohan is also advised that a failure to respond to the motion may result in entry of summary judgment granting the relief sought in the Complaint.  In preparing his responses, defendant Mollohan should be aware of the fact that a knowing assertion of a falsehood in order to avoid dismissal could, if proven, constitute perjury punishable by law.

Docket 18 at 1-2.

[3] Plaintiff attached an affidavit from its national vice president, Mr. Ray E. Carey, with its motion for summary judgment and permanent injunction. In pertinent part, the affidavit states the following:

> After being duly sworn, Ray E. Carey states:
> 1. That he is the National Vice President of Brothers of the Wheel M.C. Executive Council, Inc.

4

confusion between Plaintiff's mark and Defendant Mollohan's mark.[4]  (Dockets 17-1, 1-5.)  Those

facts are summarized from the PF&R as follows.

---

2. That he has been associated with the Brothers of the Wheel Motorcycle Club since 1977.

3. That Brothers of the Wheel M.C. Executive Council, Inc. owns the trademark, name and logo "Brothers of the Wheel" and has never and has no intention of licensing, selling or otherwise permitting Gerald Mollohan, or anyone associated with him, so defendant Mollohan and anyone associated with him will never be able to meet the primary reason for the refusal by the United States Patent and Trademark Office to register defendant's mark, which is likelihood of confusion.

4. Brothers of the Wheel M.C. Executive Council, Inc. was the first to use and the first and only entity to trademark the name and logo until Mollohan's infringement.

5. Defendant Mollohan's illegal and unauthorized infringement of the Brothers of the Wheel M.C. Executive Council, Inc.'s trademark protected items has cost the Brothers of the Wheel M.C. Executive Council, Inc. membership dues, community goodwill and services $25,000 and to date, $9,500 in attorney fees plus court costs and service of process fees.

6. The Brothers of the Wheel M.C. Executive Council, Inc. will continue to suffer irreparable harm, especially on the internet, unless defendant Mollohan's infringement is stopped.

7. [A]ll of the members of the Brothers of the Wheel Motorcycle Club, which is operated by Brothers of the Wheel M.C. Executive Council, Inc. have worked hard for over 33 years for the club to have a positive image and to raise funds for charity.

8. The Brothers of the Wheel is neither an outlaw motorcycle club nor an outlaw motorcycle gang and aggressively seeks to obey the law and uphold its good image. The term "nomad" has a special meaning among outlaw motorcycle clubs or gangs. There is a violent outlaw motorcycle club by the name of Nomads in Australia. In the United States, the term "nomad" is descriptive of a club "enforcer" and has no allegiance to any particular club chapter.

9. AMA and non-outlaw motorcycle clubs like the Brothers of the Wheel do not have nomads.

10. All allegations in the Complaint are true and accurate to the best of his knowledge.

(Docket 17-1.)

[4] Exhibit 5 to Plaintiff's complaint includes email correspondence between Plaintiff's members and Mr. Bobby Brown of Aurora, Colorado. Mr. Brown had emailed Plaintiff on January 31, 2011:

I received some information through Linked In that you were accepting members into your Nomads Chapter. Is this correct and if so where do I need to go from here?

5

Brothers of the Wheel is a motorcycle club that first began in 1977 and has chapters in West Virginia, Ohio, and Kentucky.  According to the complaint, Plaintiff engages in fund-raising for charities, raising at least $150,000 per year for various charities. (Docket 1 at 2-3.)  Plaintiff states that it has engaged in substantially exclusive and continuous use of the words "Brothers of the Wheel" and its composite marks for the motorcycle club since 1977, and that it has used its mark continuously since 1977.  (*Id.*)  Plaintiff applied for trademark registration of a word mark "Brothers of the Wheel" and a corresponding design featuring those words on August 7, 2003.  On February 15, 2005, the United States Patent and Trademark Office ("USPTO") formally issued to Brothers of the Wheel M.C. Executive Council, Inc. the mark and assigned Registration Number 2926222.  (*Id.* at 3.)  The trademark protects the name "Brothers of the Wheel M.C." and the logo of the organization.

The by-laws of Plaintiff BOTW provide that the club retains ownership of the trademark-protected patch and items but grants a license to members and retirees to use the protected items.

---

> I really believe strongly in your philosophy and being from Morgantown originally, I am strongly drawn to your organization[.]

(Docket 1-5 at 5.)  Plaintiff responded:

> I'm sorry to say you have been misinformed. Although the BOTW MC is taking in new members, we have no Nomad chapter. There is however a former member using our name to try to start his own club. We are in the process of taking legal action to stop him from using our trademarks. I regret you have been put in the middle of this situation, but the truth is the "BOTW Nomad Chapter" exists mostly in one persons confused mind and on the internet. If you ever get back closer to the east coast feel free to come see us.

(*Id.*)  Mr. Brown then replied, "[t]hank you very much for the clarification and I completely understand . . . . Thanks for information and I am sorry for the sh*t you all must be dealing with over this."  (*Id.*)

6

(Docket 1-3 at 8-10.)  Defendant Mollohan was formerly a full member of Plaintiff.  In accordance with Plaintiff's by-laws, Mollohan received permission to use items featuring the club's trademark and agreed to follow the by-laws as a condition of his membership.  (Docket 1 at 3-4.)  Defendant Mollohan retired from Plaintiff in 2000 and was given permission to use the trademarked protected items on a limited basis, again in accordance with the by-laws of the club.  (*Id.* at 4.)  At some point following his retirement from Plaintiff, Defendant started his own motorcycle club, which he named "Brothers of the Wheel Nomads."  (*Id.*)  Plaintiff claims that Defendant Mollohan has been using the initials "BOTW" and the Brothers of the Wheel mark in derogation of his license to use the protected items and in violation of federal and state laws protecting trademarks.  (*Id.*)

The following are the respective marks of the parties, with Plaintiff's mark appearing on the first and Defendant Mollohan's marks appearing thereafter: [5]



---

[5]  Defendant Mollohan's original application for trademark registration with the United States patent and Trademark Office ("USPTO") featured an eagle with a battle axe in one talon and a depiction of the American flag in the other talon, much as Plaintiff's trademark features.  In an effort to remedy the USPTO's examining attorney's concerns regarding the use of the American flag, Defendant Mollohan removed the flag and replaced it with a second battle axe in September 2011.

 

Magistrate Judge Stanley described Plaintiff's mark as follows:

> On the left side of the eagle is a battle axe, and an American flag is on the right side. As used by the plaintiff in its patches, the outer circle containing "Brothers of the Wheel M.C." has a white background, and the inner circle has a yellow background; the border that is in between the two consists of orange-colored chain links. See Trademark Documents for USPTO Registration No. 2926222, Section 8 and 15 filing of January 11, 2011, at 3.1

(Docket 31 at 5.)  She described Defendant's (original) mark as follows:

> On the left side of the eagle is an American flag, and a battle-axe is on the right side. The defendant's logo has a[n] all-yellow background; the border that is in between the inner and outer circles consists of black-colored chain links. See, e.g., Trademark Documents for USPTO Serial No.85241480, Drawing filing of February 14, 2011.2

(*Id.* at 6.)

Defendant Mollohan has been using his mark in conjunction with several social networking web sites, and indeed, he continues to display his mark and the words "BOTW MC Nomads" on his personal Facebook account as of the issuance of this memorandum opinion and order.  *See* Facebook – Chewy Mollohan, http://www.facebook.com/chewybotw?ref=ts (last visited September 28, 2012).[6]

---

[6]  In addition, on September 20, 2012, Defendant Mollohan posted the following to his personal Facebook page, which indicates his ongoing operation of or involvement in a motorcycle club organized as "Brothers of the Wheel M.C. Nomads":

> Arizona BOTW M/C Nomads~Incorporated in the States of West Virginia & Washington ~ Motorcycle Club ~ Arizona Business Office Located in Buckeye just

Plaintiff's motion for summary judgment states that Defendant Mollohan is using its marks on several additional social networking websites, some of which were verified by Magistrate Judge Stanley and others of which were captured in print form and attached as exhibits to the complaint. Plaintiff also alleges in its complaint that Defendant Mollohan is selling merchandise bearing its trademark or a mark confusingly similar to its mark, and is licensing others to use the trademark. (Docket 1 at 3-6.)  Plaintiff allegedly became aware of Mollohan's activities in October 2010. According to Plaintiff, Defendant Mollohan ignored a cease and desist letter that was sent to him, Docket 1-2 at 13, and instead expanded his use of the mark. Plaintiff additionally states that since it filed this suit, Defendant Mollohan chartered a corporation which uses the plaintiff's trademark. (Docket 15 at 5-8.)

Defendant Mollohan, in addition to representing himself in this Court, has pursued alternate avenues of vindicating his use of the mark.  Defendant applied with the USPTO to trademark the name "Brothers of the Wheel" (USPTO Serial No. 85509063) and the (evolving) logo featuring those words and concentric circles with an eagle at its center (USPTO Serial No. 85241480).  *See generally* USPTO Trademark Electronic Search System, *available at* http://www.uspto.gov/trademarks/index.jsp (in TESS database, select "basic word mark search" and enter "brothers of the wheel") (last visited September 28, 2012).  Defendant's attempt to trademark the logo appearing above was first refused by the USPTO on May 23, 2011.  The grounds for the refusal included the likelihood of confusion with Plaintiff's trademark, and the logo's impermissible use of the American flag.  (Docket 31 at 10-11.)  Revised applications to trademark the logo and

off I-10 and Watson Road. *Id.*

9

requests for reconsideration submitted by the defendant were similarly denied on these grounds by the USPTO on July 14, 2011, and August 2, 2011.  On September 22, 2011, the defendant filed an updated logo with the USPTO that added a battle axe in place of the American flag; however, this updated logo contained no changes intended to address the likelihood of confusion issue, despite the fact that prior USPTO correspondence to Defendant Mollohan contained specific suggested changes that might allow for approval of Mollohan's logo application.  Most recently, on September 10, 2012, Mollohan's latest request for reconsideration by USPTO was denied, again due to the likelihood that his mark would cause confusion with Plaintiff's mark.  Defendant Mollohan appears to have fared somewhat better in his efforts to trademark the standard character mark "Brothers of the Wheel."  This trademark was published to the Trademark Official Gazette for potential opposition on July 3, 2012.  Although Plaintiff, by counsel, attempted to oppose the mark's registration, it appears that it failed to comply with the appropriate procedural rules for filing a proper notice of opposition, and consequently, the mark probably will be issued to Defendant Mollohan.[7]

The complaint alleges the following specific causes of action.  Count One alleges infringement of a registered mark, in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).  (Docket 1 at 6-7.)  Count Two alleges false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (*Id.* at 7-9.)  Count Three alleges trademark dilution

---

[7] Of course, simple issuance of the registration to Defendant Mollohan does not mean he is immune from suit for infringing Plaintiff's identical word mark.  *Cf. Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 322-23 (1938) (trademark registration creates no substantive rights, but it confers certain procedural advantages on the registrant).  Nor does issuance of the mark mean that Plaintiff is without recourse in front of the USPTO.  To the contrary, Plaintiff is fully capable of challenging Mollohan's word mark by petitioning the USPTO for cancellation of the mark or seeking statutory cancellation in federal court.  *See* 15 U.S.C. § 1119.

by blurring, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  (*Id.* at 9-10.)

Count Four alleges cybersquatting, in violation of Section 43(d) of the Lanham Act, 15 U.S.C. §

1125(d).  (*Id.* at 10-11.)  Count Five alleges an unspecified violation of West Virginia trademark

law; it only cites to West Virginia Code Chapter 47, Article 2, and not a specific statutory section.

(*Id.* at 11.)  Count Six requests a common law injunction restraining Defendant Mollohan's

activities.  (*Id.* at 11-12.)  Plaintiff requests various remedies in its complaint, including, *inter alia*:

(1) actual or various statutory damages for Defendant's alleged cybersquatting; (2) an Order that

Defendant cancel or transfer the domain name "botw.com"; (3) preliminary and permanent

injunctions under 15 U.S.C. § 1116(a) enjoining the defendants, and anyone acting in concert with

them, from using or imitating its mark; (4) damages under 15 U.S.C. § 1117(a); and (5) an Order

under 15 U.S.C. § 1118 requiring that any items in the possession of the defendants that use or

imitate its mark be delivered to the Court and destroyed.  (*Id.* at 12-15.)  Plaintiff BOTW demands

similar relief in its summary judgment briefing, including: (1) demands that Defendant Mollohan

disclose the entity that made the items bearing the BOTW mark and the individuals who became

involved with Defendant's "Nomads" organization; (2) termination of any entity with the name

Brothers of the Wheel-Nomads; (3) relinquishment to Plaintiff of any monies that Defendant

received from Brothers of the Wheel-

Nomads; and (4) a penalty of $1,000 per day for each violation and each day that the defendants fail

to comply with the Court's judgment.  (Docket 17 at 23-24.)

## II.  DISCUSSION

The Court is not required to review, under a de novo or any other standard, the factual or

11

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir.1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the Magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

In the PF&R, Magistrate Judge Stanley recommended to this Court that the motions to dismiss be granted as to Counts III, IV, V, and VI of the complaint. (Docket 31 at 28-33.) Specifically, the PF&R recommends granting the motions on the following bases: (1) as to Count III of the complaint, because the BOTW trademark is not "famous," as required to sustain a cause of action for dilution of a mark by blurring in violation of 15 U.S.C. §1125(c); (2) as to Count IV of the complaint, because Defendant Mollohan has not registered or used a domain name that is confusingly similar to the BOTW mark, as required to sustain a cause of action for federal cybersquatting in violation of 15 U.S.C. §1125(d); (3) as to Counts V and VI of the complaint, because the complaint fails to satisfy the applicable pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Magistrate Judge Stanley also recommended denying Plaintiff's motion for default judgment and granting Defendant Mollohan's motion to deny default judgment because at least one motion to dismiss the complaint remains pending. (Docket 31 at 33-34.) Neither party has objected to the above recommendations in the PF&R, and the PF&R is therefore **ADOPTED** in full as to its recommendations on the motions to dismiss and the motions related to default judgment.

12

Accordingly, the motions to dismiss [Dockets 5, 13, 20, 26] are hereby **GRANTED** as to Counts III through VI; the motion for default judgment [Docket 14] is **DENIED**; and the motion to deny the motion for default judgment [Docket 15] is **GRANTED**.

Defendant Mollohan's objections are largely predicated on his apparent misunderstanding of the limited license he was granted to use items bearing Plaintiff's trademark by operation of Plaintiff's by-laws and by virtue of his former membership in the club. Still other of his objections relate to matters irrelevant to the Magistrate Judge's recommendations, and indeed to this case at all.[8] In all, Defendant Mollohan submitted eighty-two pages of objections, and many of those objections related to factual matters that have no bearing on the disposition of this case. Only those objections directed to dispositive portions of the PF&R and which set forth coherent opposition will be addressed below.

Defendant Mollohan objects that all references to his "Nomads" organization have been removed from the internet, and therefore much of the recommended relief has been mooted. (Docket 54 at 3.) However, as remarked on above, this statement is incorrect, at least presently. Defendant Mollohan's personal Facebook page features multiple references to the "Brothers of the Wheel

---

[8] For example, the first objection to the PF&R is that Defendant Mollohan is actively working with the USPTO to remedy any deficiencies in his trademark application and obtain rights in his mark, although Defendant claims that the PF&R "allude[s] that Defendant has not responded to the [USPTO] Office Action." (Docket 54 at 2-3.) However, the PF&R's analysis and recommendation on Counts I and II did not rely on any finding related to Defendant's reaction to the USPTO's repeated denials of his trademark application, and this objection is therefore irrelevant.

Other objections include unsubstantiated allegations that Plaintiffs do not engage in charitable activities as they claim, that Plaintiffs are actively "smearing" Defendant Mollohan on their club website, and that the Brown affidavit, *see supra* note 4, was motivated by the affiant's feelings of rejection after Defendant Mollohan refused to accept him as a member of the "BOTW Nomads" club. (Docket 54 at 19-20, 31-33.)

Nomads" club, including a rendition of the logo at issue in the present litigation.  The objection is therefore **OVERRULED**, and Defendant Mollohan is advised that any further misinformation to the Court, if found to be made intentionally, may lead to penalties more serious than a civil judgment for monetary damages.

Defendant Mollohan's next objection is worth reproducing verbatim:

> 3.  Further, the Defendant makes reference to the very relevant remarks of Magistrate Judge Stanley in the last paragraph on page #2 of her "Finding" which states: "The By-Laws of the Plaintiff provide that the club retains ownership of the trademark-protected patch (which is a collective membership mark) and items and licenses or gives permission to members are retirees to use the protected items.["]  Magistrate Judge Stanley then refers to the Plaintiff's club By-Laws.  It is the opinion of the Defendant that this statement made by Magistrate Judge Stanley confirms that Defendant Mollohan is a retiree of the Plaintiff's organization (Brothers of the Wheel Motorcycle Club) and thus received the permission of the Plaintiff upon his retirement in 2000 to use the Plaintiff's collective membership mark "for life" as stated in the Plaintiff's By-Laws.

(Docket 54 at 3-4.)  This objection reveals that Defendant Mollohan misapprehends the nature of the license he has been granted by Plaintiff's by-laws.  The by-laws, although not a model of clarity, tend to demonstrate that Plaintiff intended that its trademark and all items bearing on that trademark remain the sole property of the club.[9]  The Court cannot locate, nor can Defendant Mollohan produce, a provision of the by-laws that grants him a license to reproduce Plaintiff's trademark or a mark similar to it.  In fact, the by-laws discourage reproducing Plaintiff's trademark: "Anyone found guilty of duplicating the Club colors will face possible termination of membership."  (Docket 54-5 at

---

9    For example, both the 2000 and 2012 by-laws provide: "Anyone who has relinquished membership will return his/her colors at that time along with any properties owed to the Club and shall forfeit any properties that he has given to the Club."  (Docket 1-3 at 8 and 29.)   Also, the by-laws state: "Any retired member who decides to join another club and chooses to wear that club's colors shall put away his retired Brothers of the Wheel patch permanently.  No member will be allowed to serve two (2) clubs or fly two (2) different patches simultaneously."  (*Id.* at 9, 30.)

12.)  Contrary to Defendant Mollohan's objection, the Court **FINDS** that Magistrate Judge Stanley's interpretation of the by-laws is correct: Plaintiff retains ownership of its mark and all items bearing the mark, and the club permits members and those retirees in good standing to retain possession of certain items bearing the mark, subject to myriad conditions.  Nothing in the by-laws alters the application of federal trademark laws to this case.[10]  The objection is **OVERRULED**.

Next, Defendant Mollohan objects that there exist other motorcycle clubs bearing the name "Brothers of the Wheel," and he specifically cites one club in Indiana.  (Docket 54 at 10-11.)  To the extent Mollohan is arguing that Plaintiff should not have been issued its trademark, he fails to set forth any information that would permit the Court to make such a determination (such as the date of first use in commerce and the geographic scope of the Indiana club's use).  Instead, it appears that Mollohan is attempting to establish that the term "Brothers of the Wheel" is a generic term for motorcycle clubs across the globe.  Again, however, Defendant fails to present anything more than

---

[10]   Defendant Mollohan's mistaken reading of the by-laws is evident in other objections to the PF&R.  For example, Defendant Mollohan argues that Plaintiff prints its mark in many places and permits its members to get tattoos of the mark, allegedly evidencing Plaintiff's intent to permit unfettered use of the mark by its members or retirees.  This argument has no foundation in the record, and it misses the basic policy underlying trademark law: to protect the public's association of a particular good or service with a specific mark symbolizing the originator of the good or service.  Plaintiff is not harmed by its mark appearing on a wide swath of clothing and apparel, provided the mark continues to conjure Plaintiff's club in the minds of the public.  Instead, it harms Plaintiff for another individual, in this case Defendant Mollohan, to pass off his goods or services as those of Plaintiff's, which may occur if Mollohan uses a mark that is confusingly similar to Plaintiff's in promoting his "Nomads" club.

A parallel example may help illustrate the point.  One is permitted to wear a t-shirt bearing the word "Nike" and the unique Nike "swoosh," but he may not form a company called "Nike footwear" or use a mark confusingly similar to the swoosh.  The former use does nothing to impair the public's association of the Nike brand with its product; the latter us does.  In this case, the use of Plaintiff's mark as an indicator of Plaintiff's club does nothing to harm Plaintiff, although the by-laws may purport to restrict some such uses (for example, who can wear what apparel and when).  However, Defendant Mollohan's use of a mark similar to Plaintiff's to signify his unaffiliated motorcycle club

15

bare allegations that other clubs exist and a screen shot of an unidentifiable webpage bearing the words "Brothers of the Wheel MC of Anderson Under Construction," two photos of men that appear to be bikers, and no other substantive information.  (Docket 54-4 at 2.)  Without more, the Court is unable to discern whether other clubs going by the name "Brothers of the Wheel" exist in the United States.  Further, as Plaintiff is the owner of a registered trademark for the words "Brothers of the Wheel MC," it is presumed to be the rightful owner of the word mark and therefore entitled to exclusive use of the mark.  *See* 15 U.S.C. § 1115(a).  The alleged existence of other motorcycle clubs going by the same name as Plaintiff does nothing to diminish Plaintiff's right to relief in this case.

In the alternative, Defendant Mollohan may be suggesting that Plaintiff's remedy for possible infringement is limited to the territory in which it operates.  In this case, it appears that Plaintiff operates in Kentucky, Ohio, and West Virginia, and accordingly, although its federal trademark registration entitles Plaintiff to nationwide priority of use, the injunctive remedy of which Plaintiff may avail itself is indeed limited to the geographic area in which it operates.  In support of this rule, the Fourth Circuit has stated as follows:

> Under the Lanham Act, the senior owner of a federal registration has superior priority over all junior users, but a court will enjoin the junior user only if the registrant is likely to enter, or has entered, the junior user's trade territory. As a leading commentator has explained, "the registrant has a nationwide right, but the injunctive remedy does not ripen until the registrant shows a likelihood of entry into the disputed territory . . . . [The junior user's] use of the mark can continue only so long as the federal registrant remains outside the market area." 2 J. Thomas McCarthy, *McCarthy on Trademarks* § 26.14[1] (3d ed. 1992) (emphasis in original) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959)). This Court applied this rule in *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 849–50 (4th Cir. 1979), in which the court reasoned:

---

may confuse members of the public on the source of any services the parties render.

> After the Lanham Act, nationwide protection was extended to registered marks, regardless of the area in which the registrant actually used the mark, because under 15 U.S.C. 1072 registration constituted constructive notice to competing users. *Dawn Donut Co.*, 267 F.2d at 362. However, as held in that case, the protection is only potential in areas where the registrant in fact does not do business. A competing user could use the mark there until the registrant extended its business to the area. Thereupon the registrant would be entitled to exclusive use of the mark and to injunctive relief against its continued use by prior users in that area. *Id.* at 360, 365.

From this reasoning, the court concluded that "in no case would [the party alleging infringement] be entitled to injunctive relief except in the area actually penetrated by [that party]." *Id.* at 851.

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268-69 (4th Cir. 2003). Accordingly, the mandatory injunction Plaintiff seeks will be limited to the geographic territory which it has actually penetrated—which appears to be limited to the states of West Virginia, Ohio, and Kentucky.

Defendant Mollohan next argues that no colors are mentioned in Plaintiff's trademark registration, and the PF&R therefore erroneously considered the similarity of the colors used in Plaintiff's logo to those used in Defendant Mollohan's logo in assessing the merits of Counts I and II. (Docket 54 at 15.) After reviewing Plaintiff's trademark registration, the Court must agree with Defendant Mollohan that the PF&R erroneously considers coloration in Plaintiff's mark when it analyzes the similarity of the two marks. However, the error is inconsequential for two reasons. First, Plaintiff's trademark registration may not include and lay claim to *colors*, but the mark may very well feature the *coloration* Magistrate Judge Stanley considered. For purposes of Count II, which does not require trademark registration at all, the Court is fully able to consider the mark *as Plaintiff uses it*, not simply as it is registered. Second, even as to Count I, in considering the similarity of the marks without regard to color, the outcome is much the same. Both marks feature

17

concentric circles separated by motorcycle chains; both marks contain an eagle, wings spread, at their center; the eagle in both marks clutches an American flag in one talon and a battle axe in the other talon; and both marks feature the words "Brothers of the Wheel" in their outermost circle, with the words appearing at the same locations.  In light of these shared features, which account for the bulk of the marks,[11] the Court has no trouble concluding that the marks are substantially similar to one another and remain likely to confuse the public, as Magistrate Judge Stanley concluded in the PF&R.       Defendant Mollohan next raises an objection that was addressed and dispatched in the PF&R—that Plaintiff's mark is invalid due to its depiction of an American flag.  (Docket 54 at 15-16.)  Defendant's objection relies on 15 U.S.C. § 1052(b), which provides:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register because of its nature unless it . . . [c]onsists of or comprises the flag or coat of arms or other insignia of the United States or of any State or municipality, ... or any simulation thereof.

As Magistrate Judge Stanley aptly explained, however, the inclusion of a portion of the American flag does not always disqualify a trademark from registration.  The USPTO's trademark examination manual contains the following guideline:

> Marks containing elements of flags in a stylized or incomplete form are not refused under [15 U.S.C. § 1052(b)].  The mere presence of some significant elements of flags, such as stars and stripes (U.S. flag) or a maple leaf (Canadian flag), does not necessarily warrant a refusal.  If the flag design fits one of the following scenarios, the examining attorney should not refuse registration under [§ 1052(b)]:
>
> • The flag design is used to form a letter, number, or design.
> • The flag is substantially obscured by words or designs.
> • The design is not in a shape normally seen in flags.

---

[11]   From the Court's review, it appears that the only distinctions between the marks are that Defendant Mollohan changed the typeface of the words "Brothers of the Wheel," switched the locations of the flag and the axe, and removed the scales located above the eagle's head in Plaintiff's mark.  These alterations are extremely minimal.

18

• The flag design appears in a color different from that normally used in the national flag.

• A significant feature is missing or changed.

U.S. Dept. of Commerce, Patent and Trademark Office, Trademark Manual of Examining Procedure § 1204.01(b) (8th ed. October 2011).  Based on her analysis of the above standard and Plaintiff's mark, Magistrate Judge Stanley concluded that the last scenario applies:

> The American flag contained in the plaintiff's registered mark has significant features that are missing or changed: it has a square shape, there are no stars, and there are less than thirteen stripes. Due to this compliance with [the manual], the flag does not violate Section 1052(b).

(Docket 31 at 21-22.) Magistrate Judge Stanley also concluded that the USPTO's determination that Plaintiff's mark is eligible for registration is entitled to some degree of deference.  (*Id.* at 22.) Defendant Mollohan raises no objection to rebut the Magistrate Judge's analysis of the validity of Plaintiff's mark in light of the guidance supplied by the USPTO's manual.  Instead, Mollohan regurgitates the very basic argument that if his mark was rejected for including a rendition of the American flag, so should Plaintiff's mark be invalidated.[12]  The Court is in agreement with the Magistrate Judge on this issue, and the objection is therefore **OVERRULED**.  Straightforward application of the manual to Plaintiff's mark in this case yields the result reached by the Magistrate Judge.

---

[12]  Defendant Mollohan also argues that the USPTO is undertaking an investigation of Plaintiff's mark regarding the American flag.  He states that "a final decision is coming," and that there is "a very strong likelihood" that Plaintiff's mark will be cancelled, thus mooting this case.  First, there is nothing to substantiate Defendant's claim that Plaintiff's mark is under review and will be cancelled.  According to USPTO's records as of the date of this opinion and order, no review has been initiated.  Furthermore, as Magistrate Judge Stanley makes clear, Count II does not depend on a mark's registration with the USPTO, so this objection is wholly irrelevant as to Count II.  (Docket 21 at 28.)

Defendant Mollohan next objects that Plaintiff's mark has not gained secondary meaning in the relevant market, and therefore, it cannot state a claim for infringement (Count I) or false designation of origin (Count II).  (Docket 54 at 39-43.)  This objection overlooks the conclusion in the PF&R that Plaintiff's mark is suggestive rather than merely descriptive.  In the realm of federal trademark law, suggestive, arbitrary, or fanciful marks are treated as inherently distinctive and are therefore afforded protection.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992).  Generic marks, or marks that merely identify the "genus" of which a product is a particular "species," are entitled to no protection.  *See id.*  Descriptive marks, or those marks that simply describe a feature or features of a mark, are not inherently distinctive, but they may be entitled to protection if the mark holder can demonstrate "secondary meaning," or that the public associates its descriptive mark with its product.  *Id.*

Taking the objection in the manner most beneficial to Defendant Mollohan, he appears to argue that the PF&R was incorrect to conclude that Plaintiff's mark was suggestive and instead urges the Court to find that Plaintiff's mark is a descriptive mark that has acquired no secondary meaning.  The Fourth Circuit summarized the definitions of "suggestive mark" and "descriptive mark" as follows:

> Suggestive marks, which are also inherently distinctive, do not describe a product's features but merely suggests them.  *Retail Servs., Inc. v. Freebies Pub'g*, 364 F.3d 535, 538 (4th Cir. 2004).  In other words, the exercise of some imagination is required to associate a suggestive mark with the product.  *Id.*  Examples of suggestive marks are "Coppertone®, Orange Crush®, and Playboy®."  *Sara Lee Corp. v. Kaiser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

> Descriptive marks define a particular characteristic of the product in a way that does not require any exercise of the imagination.  *Retail Servs.*, 364 F.3d at 538.  Examples of descriptive marks include "After Tan post-tanning lotion" and "5 Minute glue."  *Sara Lee*, 81 F.3d at 464.

*George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 394 (4th Cir. 2009).  The Court concludes, as did the Magistrate Judge, that the word mark "Brothers of the Wheel" is a suggestive mark for a motorcycle club because it requires "some imagination . . . to associate [the mark] with the product."  *See Retail Servs.*, 364 F.3d at 538.  As such, the mark is inherently distinctive by law and no secondary meaning need be established in order for Plaintiff to prevail.  The objection is **OVERRULED**.

Defendant Mollohan also raises two objections[13] related to the relief sought by Plaintiff.  First, Mollohan states that he never registered the domain name "botw.com," and he is therefore unable to relinquish it, as sought by Plaintiffs.  The Court confirmed that the domain name "botw.com" belongs to a company doing business as "Bank of the West," which appears unaffiliated with Defendant's "Nomads" club.  Further, the cybersquatting claim has been dismissed, so no relief sought by Plaintiffs that relies on that claim (which forfeiture of the "botw.com" domain name does) may be awarded.  Second, Defendant Mollohan states that he has derived no financial benefit from his use of the mark, and therefore, no actual damages should be awarded.  In the PF&R, Magistrate Judge Stanley recommends awarding Plaintiff actual damages, but she also states:  "Rather than propose a specific amount, the undersigned recommends that the parties be required to submit more detailed statements of profits, losses, and costs to the presiding District Judge before a damages award is calculated."  (Docket 31 at 56.)  Because there is a discrepancy between the amount claimed by Plaintiffs in the affidavit of its national vice-president, *see supra* note 3, and Defendant Mollohan in his objections, the Court will **ADOPT** Magistrate Judge Stanley's recommendation on

---

[13]  Defendant Mollohan also states that he is financially and emotionally unable to cope with a money judgment against him.  This objection, to the extent it may be classified as such, is not relevant to the Court's analysis of Plaintiff's right to relief.

the award of actual damages.  Within thirty days, the parties are to submit to the Court a full and detailed accounting of the amounts of profits, losses, and costs attributable to Defendant Mollohan's use of the mark.  In lieu of the accounting, and in recognition of Plaintiff's apparent abandonment of actual money damages in its response to Mollohan's objections, Plaintiff may submit a notice that it no longer seeks money damages.[14]

Finally, Defendant Mollohan makes several objections that are relevant only to claims on which his motions to dismiss were granted.  For example, he argues that Plaintiff's mark is not a "famous" mark, and therefore a cause of action for dilution by blurring cannot be maintained.  Magistrate Judge Stanley made exactly this finding in her PF&R.  Defendant Mollohan also argues that Plaintiffs cannot demonstrate bad faith, as required to state a claim for cybersquatting (Count IV).  Again, Magistrate Judge Stanley recommended dismissing the relevant count of Plaintiff's complaint, though for other reasons, and the objection is therefore irrelevant.

### III. CONCLUSION

Pursuant to the foregoing discussion: (1) the PF&R [Docket 31] is **ADOPTED**; (2) the motions to dismiss [Dockets 5, 13, 20, 26] are **GRANTED** as to Counts III, IV, V, and VI; (3) the motion for default judgment [Docket 14] is **DENIED**; (4) the motion to deny the motion for default judgment [Docket 15] is **GRANTED**: and (5) the motion for summary judgment [Docket 17] is

---

[14]  This suggestion is based on a representation from Plaintiff's attorney to the Court, albeit in an improper setting.  Plaintiff's attorney made several attempts to communicate ex parte with the Court and Court staff in chambers.  This contact is highly inappropriate, especially given the pro se status of Defendant Mollohan.  The Court and chambers staff are unable to provide legal assistance to parties or their counsel, and a practicing attorney should know better than to solicit such advice from the Court.  To be clear, in issuing this opinion, the Court has relied solely on the record as it appears in the electronic case filing system, and no consideration was given to any matter not appearing in the record.

**GRANTED**.  Defendant Mollohan's motion for entry of injunction [Docket 24] is **DENIED AS MOOT**.

Furthermore, the Court **FINDS**, as did the Magistrate Judge, that all four of the requirements for the issuance of an injunction[15] are present in this case:

> First, the plaintiff has satisfied the irreparable injury requirement. There is evidence of actual confusion, as stated earlier; it has suffered monetary losses, as testified to in the affidavit of Mr. Carey and not denied by the defendant; and its mark and association have become associated with the ne'er-do-well community of motorcycle nomads. There is also an inadequate remedy at law, as it is evident that the defendant has no intention of ceasing his infringing behavior. The balance of hardships also falls on the plaintiff's side. It is the senior user of the mark, and has spent decades building up its name and reputation; any losses suffered by the defendant are his own fault, especially after he admittedly used the plaintiff's mark as his inspiration. The public would also not be disserved by the issuance of an injunction against the defendant.

(Docket 31 at 52-53.)  Further, it is apparent to the Court that Defendant Mollohan was aware of Plaintiff's logo and word mark, and his subsequent use of each was therefore in bad faith.

The parties are **DIRECTED** to proceed as follows:

- Defendant Mollohan is **ORDERED** to cease use of the protected logo featuring concentric circles with an eagle clutching battle axes at its center to identify a motorcycle club organized or operating in Ohio, West Virginia, or Kentucky.

- Defendant Mollohan is further **ORDERED** to cease using the word mark "Brothers of the Wheel" or the acronym "BOTW" to identify the motorcycle club he incorporated in West Virginia and apparently operates in a number of states, to the extent the mark is used in Plaintiff's area of operation—that is, Kentucky, West Virginia, and Ohio.

---

[15]  Those requirements are: (1) that the party seeking the injunction has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011) (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)).

- Defendant Mollohan is **ORDERED** to dissolve any business entity organized in West Virginia, Kentucky, or Ohio bearing the name "Brothers of the Wheel."

- Defendant Mollohan is **ORDERED** to submit to the Court within thirty days of the entry of this order a report detailing his compliance with its requirements. Failure to submit a report may lead to the imposition of sanctions, including monetary fines or imprisonment.

- The parties are **ORDERED** to submit to the Court within thirty days of the entry of this order a report setting forth in detail any profits Defendant received from the infringement, any damages sustained by Plaintiff as a result of the infringement, and the costs of the action, including attorney's fees.

- The Magistrate Judge recommended an award of both treble damages and attorney's fees, and the Court **ADOPTS** that recommendation. However, no amount of damages will be ordered until the accounting of profits, losses, and costs and fees is received and evaluated.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        November 14, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE